Filed 9/8/23  P. v. Brierly CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C097532 |
| Plaintiff and Respondent, | (Super. Ct. Nos. CRF210005206, CRF210005634, CRF210006008) |
| v. | |
| MICHAEL PINE BRIERLY, | |
| Defendant and Appellant. | |

After the trial court denied defendant Michael Pine Brierly's motion for mental health diversion, he pleaded no contest to a series of crimes including vandalism, threats, stalking, and resisting, obstructing, or delaying a peace officer.  The trial court placed defendant on probation for two years.  On appeal, defendant argues we should reverse and remand the case for the trial court to reconsider his application for mental health diversion due to recent changes to Penal Code, section 1001.36, effective January 1, 2023.  (Senate Bill No. 1223 (2021-2022 Reg. Sess.) (Senate Bill 1223); Stats. 2022, ch. 735.)  The People agree.  We reverse and remand for the trial court to reconsider defendant's application.

1

## FACTS AND HISTORY OF THE PROCEEDINGS

As explained by the probation report, these three cases arise from three different events in 2021.

In the first encounter (the screen door case – case No. 21F05634), the victim heard a knock on his door and observed defendant walking away. When the victim opened his front door, he found a gash in the security screen door. Defendant said, "Yeah, I did that." When the victim's father arrived at the apartment, defendant ran into his own apartment, shook his own security door, and waved a black object at the father. The victim also told law enforcement he heard a loud banging noise from the garage and when he inspected the area, he noticed the garage door had been stabbed with a knife-like instrument.

The next day (the tire slashing case – case No. 21F05206), the victim's father and another man drove up in a van and parked near an open garage door. Defendant came out of the garage brandishing a pocket knife threating to kill the father. He was four or five feet away. In response, the father pulled out a handgun and told defendant not to come closer or he would shoot. Defendant put his arms out by his sides and said, "You're not going to do it . . . ." The father backed away and got back into the van and locked the door. Defendant approached the van, stabbed a tire (flattening it), and returned to his own home. As he retreated into the garage, defendant threw up gang signs and said words that did not make sense. Defendant popped in and out of his house until officers arrived, and at least once, yelled profanity at the father during this time.

When law enforcement arrived, they used their public address system to order defendant to come outside. Defendant did not answer. Law enforcement arrested defendant later that day.

A little over a month later (the stalking case – case No. 21F06008), defendant violated a prior restraining order by standing in front of the victim's home. He left and returned several times without any apparent reason.

In order to arrest defendant for this offense, officers turned off the electricity to his house to get him to come outside. When he came out, officers attempted to arrest him, but defendant broke free and ran back inside. Defendant disobeyed multiple commands to stop resisting and injured one officer's arm by slamming a security door on it twice. In the screen door case, the complaint charged defendant with vandalism. (Pen. Code, § 594, subd. (b)(1); statutory section citations that follow are found in the Penal Code unless otherwise stated.) The complaint further alleged defendant had a prior felony conviction which was a strike. (§ 1170.12.)

In the tire slashing case, the complaint charged defendant with two counts of criminal threats (§ 422), one count of vandalism (§ 594, subd. (b)(1)), and two counts of exhibiting a deadly weapon (§ 417, subd. (a)(1)). The complaint further alleged defendant had a strike prior and prior serious felony conviction. (§§ 667, subd. (a)(1), 1170.12.)

In the stalking case, the complaint charged defendant with stalking while subject to a court order (§ 646.9, subd. (b)), and two counts of obstructing or resisting an executive officer (§ 69). The complaint further alleged defendant committed the offense while released on bail or on his own recognizance. (§ 12022.1.)

Defendant waived his right to a preliminary hearing and filed a motion for mental health diversion under section 1001.36. In support of this motion, defendant submitted a letter and declaration from his medical doctor, and a letter from a clinical forensic psychologist. In the letter, his doctor stated he was managing defendant's bipolar disorder, and that his psychiatric disorder caused the behavior that put defendant before the court. In his declaration, the doctor confirmed defendant had bipolar disorder and this was a "substantial" or "primary" factor for his behavior that led to the charges. The

3

psychologist's letter stated defendant has an ongoing diagnosis of bipolar disorder, and at the time of the offenses he was "off medications, mentally and emotionally unstable, probably experiencing some level of mania," and his "disorder played a significant factor in the commission of these felony charges."

Defendant filed his own declaration stating he was prepared to consent to diversion and would waive his right to a speedy trial. In a second declaration, he stated he believed it was important he not deviate from his mental health treatment indicating his amenability to treatment.

At the hearing on the motion, the trial court expressed skepticism as to whether defendant's mental health disorder contributed to these crimes. In its tentative ruling, the court stated: "I don't know when [defendant] was actually diagnosed with bipolar disorder. All I know is that he claims he has been managing bipolar disorder. I know that the doctors that work with him say that he has bipolar disorder, but I don't know how it was diagnosed to begin with. [¶] And in addition, it seems like all of [defendant's] events seem to arise — assuming that there is this bipolar disorder — they seem to arise after he's consumed alcohol or drugs. And so when the Court has to look to whether or not the diagnosis plays a substantial part in the crimes, it appears to me that all of the crimes are predicated on [defendant] consuming alcohol and/or using controlled substances." After further argument from the parties, the court confirmed its tentative ruling and denied defendant's diversion motion but found defendant should be treated in the community.

In the screen door case, defendant pleaded no contest to vandalism. (§ 594, subd. (b)(1).) In the tire slashing case, defendant pleaded no contest to criminal threats. (§ 422.) In the stalking case, defendant pleaded no contest to stalking while subject to a court order (§ 646.9, subd. (b)), and resisting, obstructing, or delaying a peace officer (§ 148). In exchange for his pleas, defendant was promised two years' probation, a jail sentence, and that the remaining charges were to be dismissed (and they were).

4

At sentencing, the trial court, suspended imposition of sentence and placed defendant on probation for two years.

Defendant appealed and the trial court issued a certificate of probable cause in each of the cases.

DISCUSSION

Defendant argues we should remand this case for further proceedings due to the most recent changes to section 1001.36 effective while this appeal was pending. The People agree. We agree as well.

As originally enacted in 2018, section 1001.36, subdivision (a), gave the trial court discretion to grant a defendant pretrial diversion if the defendant met six different criteria. (Stats. 2018, ch. 34, § 24.) The legislative purpose of this diversion statute " 'is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.' (§ 1001.35, subds. (a)-(c).)" (*People v. Frahs* (2020) 9 Cal.5th 618, 626.) In *Frahs,* our Supreme Court stated this statute "offers a potentially ameliorative benefit for a class of individuals — namely, criminal defendants who suffer from a qualifying mental disorder" and the "procedures instituted by the enactment carry the potential of substantial reductions in punishment for the aforementioned parties." (*Id.* at p. 631.) As a result, the court concluded this new statute should be applied retroactively under *In re Estrada* (1965) 63 Cal.2d 740. (*People v. Frahs*, at pp. 630-631.)

The statute has been amended four times since its original enactment. Under the version of the statute in effect when the trial court denied his motion for diversion in

5

2022, section 1001.36 provided a trial court had discretion to grant pretrial diversion if it found all of the following: (1) the court was satisfied the defendant suffered from a qualifying mental disorder; (2) the court was satisfied the disorder played a significant role in the commission of the charged offense; (3) in the opinion of a qualified medical health expert, the defendant's symptoms would respond to mental health treatment; (4) the defendant consented to diversion and waived his or her speedy trial right; (5) the defendant agreed to comply with treatment; and (6) the court was satisfied the defendant would not pose an unreasonable risk of danger to public safety if treated in the community. (Former § 1001.36, subd. (b)(1)(A)-(F.); Stats 2022, ch. 47.) Notably, this version did contain a presumption that a diagnosed mental disorder significantly contributed to the offense. (Former § 1001.36, subd. (b)(1)(A)-(F.); Stats 2022, ch. 47.)

This law changed once again after the trial court sentenced defendant, but while this appeal was pending. Senate Bill 1223 became effective January 1, 2023, and amends section 1001.36. (Stats. 2022, ch. 735, § 1.) Section 1001.36 now provides a two-step review. (§ 1001.36, subds. (b) & (c).) The court must first find a defendant is eligible for pretrial diversion if (1) the defendant has been diagnosed with qualifying mental disorder(s), and (2) the defendant's mental disorder(s) was a significant factor in the commission of the charged offense. (§ 1001.36, subd. (b).) If the defendant is "eligible," the trial court must then consider whether the defendant is suitable for pretrial diversion utilizing the same four factors from the prior version of the statute outlined, *ante*. (§ 1001.36, subd. (c).)

The law now provides that when making the initial decision on eligibility, "If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).) This new presumption further broadens the ameliorative

6

effects of section 1001.36, and we conclude it should be applied retroactively. (*People v. Frahs, supra*, 9 Cal.5th at p. 630.)

"A trial court's ruling on a motion for mental health diversion is reviewed for an abuse of discretion . . . . 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147.)

Here, defendant provided evidence of his diagnosed mental disorder and its contribution to the crimes as well as evidence supporting each of the other factors showing his suitability for diversion. Due to no fault of its own, the trial court applied the incorrect legal standard when it determined defendant was not eligible for diversion. That is, the trial court failed to apply the new presumption or identify any clear and convincing evidence that overcame the presumption. This was an abuse of discretion in light of the change in the law and we are thus required to remand the matter to the trial court.

On remand, trial court shall reevaluate defendant's application under section 1001.36, as amended by Senate Bill 1223. We do not intend to preclude the trial court from considering any subsequent evidence that may come to light on the relevant factors of eligibility or suitability. We express no view concerning the ultimate outcome of defendant's application.

DISPOSITION

The judgment is reversed. The matter is remanded for a new hearing for the trial court to consider appellant's application for mental health diversion under section 1001.36, as amended by Senate Bill 1223.

 

 

_____

HULL, J.

We concur:

_____

EARL, P. J.

_____

RENNER, J.

8